## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:16cv304

| | | |
|---|---|---|
| JUDESHIEA QUARLES, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| C.W. WEEKS, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Pending before the Court is the Motion to Dismiss [# 8]. Plaintiff brought

this action against Defendant asserting a state law malicious prosecution claim and

a claim pursuant to 42 U.S.C. § 1983. Defendant now moves to dismiss both

claims on a number of grounds. The Court **RECOMMENDS** that the District

Court **GRANT in part** and **DENY in part** the motion [# 8].

### I.     Background

In early 2012, Crystal Shytles reported to the Forest City Police Department

that one or more people broke into her home and stole her laptop, television, a ring,

a suitcase, tools, and other items. (Pl.'s First Am. Compl. ¶ 5, ECF No. 5.)

Shytles also reported that the individuals damaged a screen and side door during

the robbery. (Id.) Officers Scroggs and Robbins with the Forest City Police

-1-

Department responded to the reported robbery, and the department began an investigation.  (Id. ¶ 6.)  Detective Gooch led the investigation.  (Id. ¶ 7.)

As part of his investigation, Detective Gooch spoke to one of Shytles's white neighbors, Patty Bond. (Id. ¶ 7.)  Bond claimed to have seen two black men exit the home around 5:30 a.m. with a laptop and get into a black car.  (Id. ¶ 8.)  The statement by Bond was the only evidence that the men involved in the robbery were black.  (Id. ¶ 14.)   The two men then remained in the car in front of Shytles's house while they used the laptop and laughed about what they were watching on the laptop.  (Id. ¶ 9.)   Bond stated that she could see the faces of the two men because of the light coming off the laptop screen.  (Id.)

After watching something on the laptop, the two men got back out of the car and re-entered the home, where they began turning the interior lights on and off.  (Id. ¶ 10.)   The two men then exited the home and returned to the car.  (Id.)  Once back in the car, the two men sat in the car in front of Shytles's home for another ten to fifteen minutes before driving off.  (Id.)  The interior light of the car was on while the two men were sitting in the car.  (Id.)

Bond did not report this activity to the police until Detective Gooch spoke with her.  (Id. ¶¶ 7, 11.)  Bond also did not report seeing the two men remove any of the items reported stolen other than the laptop.  (Id. ¶ 12.)

-2-

Approximately ten days later, Bond identified a black male in a police lineup as one of the men she saw in the car. (Id. ¶ 15.) Bond stated that she was 90% certain the man was one of the individuals involved in the robbery. (Id.) The police, however, subsequently cleared this individual as a suspect. (Id. ¶ 16.)

Shytles became angry at Bond and told the police that she believed Bond was lying and knew who had broken into her home but was protecting the individuals. (Id. ¶ 17.) The police identified at least three other black males who had either lived in the house or had been caught trespassing, but the police eliminated each of these individuals as a suspect. (Id. ¶ 18.)

Bond also continued to provide information to the police. (Id. ¶ 19.) Bond twice called the police and reported seeing the black car involved in the robbery in the neighborhood. (Id. ¶ 20.) She also reported that the individuals in the car were black and provided the car's license plate number to the police. (Id.) The police tracked down the owners of the cars, but the owners were white. (Id. ¶ 21.) Bond made a third report to the police about seeing the black car with the two black men in the area, but was unable to get the license plate number. (Id. ¶ 22.)

A little over a year after the robbery, Detective Gooch closed the investigation because of the lack of any further leads. (Id. ¶ 24.) The information provided by Bond to the police during this yearlong investigation proved to be

unreliable.  (Id. ¶¶ 7, 19, 24.)

Shytles, however, was upset by the closing of the investigation and sought out Officer Shelton ten days after Detective Gooch closed the investigation.  (Id. ¶ 25.)  Shytles told Officer Shelton that Shytles's friend, Ami Cooper, told her that she had seen Plaintiff come over to the house to help change a tire on a car two weeks before the robbery.  (Id.)  Officer Shelton then met with Plaintiff on March 6, 2013.  (Id. ¶ 25.)  Plaintiff told Officer Shelton that he did not recall changing a tire for anyone, denied being involved in any robbery, and offered to take a polygraph.  (Id. ¶ 25.)

Approximately fourteen months after the robbery, Bond participated in a photo lineup that included a photograph of Plaintiff.  (Id. ¶ 27.)  Bond identified Plaintiff's photo from the lineup and stated that she was 80% certain that Plaintiff was one of the black men she had seen the night of the robbery.  (Id.)   Three months later, Defendant Weeks, an officer with the Forest City Police Department, interviewed Cooper.  (Id. ¶¶ 2, 28.)  Cooper told Defendant Weeks that Plaintiff had come to the house while Cooper was living with Shytles.  (Id. ¶ 29.)  Cooper further identified this time period as January and February of 2011, just before Cooper's mother died on February 10, 2011.  (Id. ¶¶ 29-30.)

Cooper told Defendant Weeks that Plaintiff came out to the house while she

was living with Shytles to bring an air compressor for her boyfriend, who had gotten a flat tire. (Id. ¶ 31.) At the time, Plaintiff worked for the brother of Cooper's boyfriend at a pawn shop. (Id. ¶ 32.) Cooper told Defendant Weeks that Plaintiff came inside and quietly waited while her boyfriend used the air compressor to fill the tire. (Id. ¶ 33.) Plaintiff did not explore the house, and he stayed in one room the entire time he was waiting. (Id.) After Cooper's boyfriend finished using the air compressor, Plaintiff left the house. (Id.) For some reason, Cooper stated that Plaintiff had brought the air compressor to the house only two weeks before the robbery, despite the fact that she had moved out of the house a year earlier. (Id. ¶¶ 29, 31 34-35.) Defendant Weeks made no effort to address the inconsistencies between Cooper's statements that: (1) Plaintiff had come to the house while she was living at the house; (2) Cooper moved out of Shytles's house in February of 2011; (3) the robbery occurred in February of 2012, a year after Cooper had moved out; and (4) Plaintiff had come over with the air compressor two weeks before the robbery. (Id. ¶¶ 28-36.)

Based on the photo lineup identification of Bond and the statement by Cooper that Plaintiff was at the house two weeks before the robbery, Defendant Weeks went to a magistrate and obtained a warrant for Plaintiff's arrest on July 31, 2013. (Id. ¶ 37; Ex. 1 to Def.'s Mot. Dismiss, ECF No. 9-2.) The arrest warrant

was issued based on the information provided under oath by Defendant Weeks. (Ex. 1 to Def.'s Mot. Dismiss.) Plaintiff, however, contends that Defendant Weeks failed to disclose the totality of the facts of the investigation to the magistrate in order to obtain the arrest warrant. (Pl.'s Am. Compl. ¶ 38.) Specifically, Plaintiff contends that Defendant Weeks failed to disclose to the magistrate: (1) that Cooper could not have seen Plaintiff at the house two weeks prior to the robbery because she stated that she had seen him when she was living in the house, which was a year prior to the robbery; (2) that Bond had misidentified another subject ten days after the robbery; (3) that Bond provided several other stories to the police that that turned out to be inaccurate; and (4) that Bond's version of the events regarding what the two individuals took from the house was not consistent with what Shytles reported stolen. (Id. ¶¶ 39-40.) Plaintiff contends that Defendant Weeks withheld or omitted this information from the magistrate deliberately in order to obtain the arrest warrant despite not having probable cause. (Id. ¶¶ 51-58.)

Plaintiff was arrested pursuant to the warrant at issue in this dispute in May of 2014 and spent 140 days in jail before posting bond. (Id. ¶ 41.) On July 1, 2014, a probable cause hearing was held in Superior Court. (Ex. 3 to Def.'s Mot. Dismiss, ECF No. 9-4.) Based on the evidence submitted at the hearing, the Judge found probable cause that Defendant Weeks committed the crime. (Ex. 4 to Def.'s

-6-

Mot. Dismiss, ECF No. 9-6.) Subsequently, the Grand Jury returned a Bill of Indictment charging Plaintiff with Felonious Breaking and Entering and Felonious Larceny. (Ex. 6 to Def.'s Mot. Dismiss, ECF No. 9-7.)

Plaintiff's case went to trial in June of 2015. (Pl.'s Am. Compl. ¶ 44.) At trial, Cooper and her boyfriend both testified that Plaintiff came to Shytles's house with the air compressor a short time before Cooper's mother died. (Id.) Counsel for Plaintiff introduced the death certificate for Cooper's mother, which showed that she passed away on February 10, 2011, nearly a year before the robbery. (Id. ¶ 45.) Bond also identified Plaintiff during the trial, but counsel introduced the fact that she had misidentified a different individual with a higher degree of certainty shortly after the robbery. (Id. ¶ 47.) Plaintiff contends that Defendant Weeks knew about the date of death of Cooper's mother and the fact that Bond previously misidentified a suspect, but did not disclose this information to the magistrate when seeking the warrant for Defendant's arrest. (Id. ¶¶ 46, 48.) Ultimately, the jury acquitted Plaintiff. (Id. ¶ 49.)

Plaintiff then brought this action asserting a state law claim for malicious prosecution and a Section 1983 claim based on the Fourth Amendment to the United States Constitution. Defendant moves to dismiss both claims on a number of grounds. The Motion to Dismiss is now properly before this Court for a

Memorandum and Recommendation to the District Court.

## II.     Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the claims state a plausible claim for relief.  See Francis v. Giacomelli, 588 F.3d 186, 189 (4th Cir. 2009).  In considering Defendant's motion, the Court accepts the allegations in the Amended Complaint as true and construes them in the light most favorable to Plaintiff.  Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009); Giacomelli, 588 F.3d at 190-92.  Although the Court accepts well-pled facts as true, it is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement . . . ." Consumeraffairs.com, 591 F.3d at 255; see also Giacomelli, 588 F.3d at 189.

The claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); see also Consumeraffairs.com, 591 F.3d at 256.  "[A] formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555, 127 S. Ct. at 1965.  Nor will mere labels and legal conclusions suffice.  Id.  Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662,

678, 129 S. Ct. 1937, 1949 (2009).

The Amended Complaint is required to contain "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; see also Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949; see also Consumeraffairs.com, 591 F.3d at 255. The mere possibility that a defendant acted unlawfully is not sufficient for a claim to survive a motion to dismiss. Consumeraffairs.com, 591 F.3d at 256; Giacomelli, 588 F.3d at 193. Ultimately, the well-pled factual allegations must move a plaintiff's claim from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Consumeraffairs.com, 591 F.3d at 256.

## III. Analysis

### A. The Section 1983 Claim

Section 1983 itself does not create a federal right, and to state a claim under Section 1983 a "plaintiff must allege that a particular statute or provision of the United States Constitution has been violated which confers a right which Congress intended to be enforceable by private cause of action." Bio-Med. Applications of N.C., Inc. v. Electronic Data Sys. Corp., 412 F. Supp. 2d 549, 552 (E.D.N.C.

-9-

2006); see also Gonzaga Univ. v. Doe, 536 U.S. 273, 285, 122 S. Ct. 2268, 2276 (2002).  The Amended Complaint asserts a Section 1983 claim based on Plaintiff's right to be free from unreasonable seizures under the Fourth Amendment. Specifically, Plaintiff alleges that his arrest violated the Fourth Amendment because it was accomplished without probable cause.

Defendant contends that he is entitled to qualified immunity as to the Section 1983 claim asserted against him in his individual capacity. The doctrine of qualified immunity protects government officials from civil liability in Section 1983 actions provided that the official's conduct does not violate a clearly established constitutional right.  Doe v. S.C. Dep't of Soc. Servs., 597 F.3d 163, 169 (4th Cir. 2010); Snider v. Lee, 584 F.3d 193, 198 (4th Cir. 2009).  Qualified immunity presents a two-pronged inquiry.  Massey v. Ojaniit, 759 F.3d 343, 353-54 (4th Cir. 2014); S.C. Dep't of Soc. Servs., 597 F.3d at 169.  In the context of a motion to dismiss, Courts should grant government officials qualified immunity unless: (1) the plaintiff alleges facts that make out a violation of a constitutional right; and (2) the constitutional right at issue was "clearly established" when the alleged misconduct occurred.  S.C. Dep't of Soc. Servs., 597 F.3d at 169. [1]

---

[1] In addition asserting qualified immunity, Defendant moved to dismiss the Section 1983 claim for failure to state a claim.  Because the Court's analysis as to whether Defendant is entitled to qualified immunity subsumes the Rule 12(b)(6) failure to state a claim argument put forth by Defendant in his motion, the Court has condensed its Section 1983 analysis into this one section.

-10-

Defendant does not challenge whether the constitutional right at issue was clearly established at the time, only that the Amended Complaint fails to allege facts that establish a violation of the Fourth Amendment.

In order to state a claim under the Fourth Amendment, Plaintiff need only allege that (1) Defendant caused (2) a seizure of Plaintiff pursuant to legal process that was not supported by probable cause, and (3) the criminal proceedings terminated in Plaintiff's favor. Massey, 759 F.3d at 356; Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012). "A plaintiff's allegations that police seized him 'pursuant to legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor are sufficient to state a . . . claim alleging a seizure that was violate of the Fourth Amendment.'" Miller v. Prince George's Cnty, Md., 475 F.3d 621, 627 (4th Cir. 2007) (quoting Brooks v. City of Winston-Salem, 85 F.3d 183 (4th Cir. 1996)). It is undisputed that the Amended Complaint alleges that Defendant was seized pursuant to legal process and that the criminal proceedings terminated in his favor. Moreover, Defendant's contention that the Section 1983 claims fails because he was not the arresting officer is without merit. Miller, 475 F.3d at 630 (rejecting a similar argument where the arresting officer was not the named defendant). Accordingly, the pertinent question for the Court is whether the Amended Complaint sufficiently alleges that

the arrest warrant was not supported by probable cause.

Plaintiff contends that his seizure was unlawful because Defendant Weeks intentionally withheld or omitted information from the magistrate in order to obtain the arrest warrant despite not having probable cause for its issuance.   In order to state such a claim, Plaintiff must allege that:

> First, plaintiffs must allege that defendants "knowingly and intentionally or with a reckless disregard for the truth" either made false statements in their affidavits or omitted facts from those affidavits, thus rendering the affidavits misleading. See Franks, 438 U.S. at 155–56, 98 S.Ct. 2674; Miller, 475 F.3d at 627. Second, plaintiffs must demonstrate that those "false statements or omissions [are] 'material,' that is, 'necessary to' " a neutral and disinterested magistrate's authorization of the search. Miller, 475 F.3d at 628 (quoting Franks, 438 U.S. at 155–56, 98 S.Ct. 2674).

Evans, 703 F.3d at 650; see also Miller, 475 F.3d at 627-28; Osborne v. Georgiades, __ F. App'x __, 2017 WL 521570, at *3-4 (4th Cir. 2017). Allegations of negligence or innocent mistake by an officer are insufficient to state a claim under the Fourth Amendment.  Miller, 475 F.3d at 627-68.   Where a claim is based on an omission, the plaintiff must allege that the officer failed to inform the magistrate who issued the arrest warrant of fact that the officer knew would negate the magistrate's finding of probable cause.   Matthews v. Thomas, 385 F. App'x 283, 287 (4th Cir. 2010).

As a threshold matter, the Amended Complaint alleges that Defendant

Weeks obtained the arrest warrant from the magistrate by withholding information, and that he acted either intentionally and deliberately or with reckless disregard for the truth. (Pl.'s Am. Compl. ¶¶ 53, 54, 58-9, 61-63, 68.) The Amended Complaint also lays out in detail the facts that Plaintiff contends were omitted from the magistrate in order to obtain the arrest warrant, including that Cooper had seen Plaintiff in the house more than a year before the robbery, not two weeks before, and that Bond initially misidentified another suspect right after the crime. (See e.g., id. ¶53.) Such allegations are sufficient at this stage of the proceedings to satisfy the first prong of the Court's inquiry.

The closer question is whether the alleged omissions are material. See Evans, 703 F.3d at 650; see also Miller, 475 F.3d at 627-28. As the Fourth Circuit explained in Miller:

> in order to violate the Constitution, the false statements or omissions must be "material," that is, "necessary to the [neutral and disinterested magistrate's] finding of probable cause." Id. at 155–56, 98 S.Ct. 2674. To determine materiality, a court must "excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the 'corrected' warrant affidavit would establish probable cause." Wilson, 212 F.3d at 789; see also Pierce v. Gilchrist, 359 F.3d 1279, 1293 (10th Cir.2004). If the "corrected" warrant affidavit establishes probable cause, no civil liability lies against the officer.

475 F.3d at 628; see also Osborne, 2017 WL 521570, at *4.

The Amended Complaint alleges that Defendant Weeks obtained the arrest

-13-

warrant based on Bond's identification of Plaintiff and Cooper's statement that she saw Plaintiff at Shytles's home two weeks prior to the robbery. (Pl.'s Am. Compl. ¶ 37.) Plaintiff contends that Defendant Weeks intentionally failed to disclose to the magistrate that Bond had misidentified another suspect ten days after the robbery with a greater certainty than she identified Plaintiff approximately a year after the robbery. (Id. 40.) In addition, Defendant Weeks failed to disclose to the magistrate that Bond had also provided several other reports to the police that turned out to be incorrect. (Id.) In short, Plaintiff contends that if the magistrate had been provided such information, the magistrate would not have been justified in relying on the witness identification because it was either unreliable or unbelievable. Similarly, Plaintiff contends that Defendant Weeks intentionally failed to disclose to the magistrate that Cooper was staying at Shytles's home a year prior to the robbery and had seen Plaintiff at that time, not two weeks prior to the robbery.

Based on the allegations in the Amended Complaint, the Court finds that the omissions by Defendant Weeks are material to the magistrate's finding of probable cause. See Miller, 475 F.3d at 628. The omitted information regarding Bond, including her prior misidentification immediately after the robbery, undermines Bond's credibility. The only information presented to the magistrate that could

-14-

support Bond's identification was Cooper's statement that she saw Plaintiff at the home two weeks before the robbery. And Plaintiff alleges that Defendant Weeks deliberately withheld the fact that Cooper had actually been at the house one year prior to the robbery, not two weeks. The Court finds that had all the information been presented to the magistrate, there would not have been a basis for probable cause. Accordingly, the Court finds that based on the factual allegation in the Amended Complaint, Plaintiff has sufficiently set forth a constitutional violation based on his arrest to overcome the defense of qualified immunity at the Rule 12(b)(6) stage. The Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to the Section 1983 claim.

**B. The State Law Claim**

**1. The Amended Complaint States a Malicious Prosecution Claim**

Plaintiff also asserts a state law malicious prosecution claim against Defendant Weeks in this individual and official capacities. To state a malicious prosecution claim under North Carolina law, Plaintiff must allege: (1) that Defendant initiated the earlier proceedings; (2) that the Defendant acted with malice; (3) a lack of probable cause; and (4) termination of the proceedings in Plaintiff's favor. Best v. Duke Univ., 448 S.E.2d 506, 510 (N.C. 1994). There is no dispute that Defendant initiated the proceedings by obtaining the arrest warrant

-15-

and that the proceedings terminated in Plaintiff's favor. Moreover, the Court's Section 1983 probable cause analysis is equally applicable to the state law claim. See Beeson v. Palombo, 727 S.E.2d 343, 350 (N.C. Ct. App. 2012) (explaining that the Court looks to whether the information provided to the Magistrate supported a probable cause determination and whether any of the information omitted by the defendant was material to the probable cause determination). The Court has already determined that the omitted material was material, and that if all the information had been presented by Defendant Weeks to the magistrate there would not have been a basis for probable cause. Plaintiff has also alleged more than an act of negligence or mistake on the part of Defendant Weeks; Plaintiff alleged that the omission was intentional or made with reckless disregard for the truth. Finally, the Court may infer malice if the arrest warrant was issued without probable cause. Cook v. Lanier, 147 S.E. 2d 910, 914 (N.C. 1966); see also Mejia v. Bowman, 785 S.E.2d 185 (N.C. Ct. App. 2016) (unpublished). The Court finds that the Amended Complaint contains sufficient factual allegations to state a claim for malicious prosecution based on the arrest of Plaintiff.

### 2. Public Official Immunity

Public official immunity is a form of governmental immunity that precludes suits against public officials sued in their individual capacity. Hart v. Brienza, 784

S.E.2d 211, 215 (N.C. Ct. App. 2016); <u>Fullwood v. Barnes</u>, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016).  "[A] public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt."  <u>Wilcox v. City of Asheville</u>, 730 S.E.2d 226, 288 (N.C. Ct. App. 2012).  An act is malicious when it is: (1) done wantonly, (2) contrary to the duty of the actor, and (3) intended to injury another.  <u>Hart</u>, 784 S.E.2d at 215; <u>Fullwood</u>, 792 S.E.2d at 550.

The factual allegations in the Amended Complain are sufficient to overcome the doctrine of official immunity and allow the claim asserted against Defendant in his individual capacity to proceed.  While Defendant may prevail at the summary judgment stage on his assertion of public official immunity, the factual allegations alleged in the Amended Complaint are sufficient to allow the claim to survive a Rule 12 motion.  The Amended Complaint alleges that Defendant acted with malice in intentionally withholding information from the magistrate that would have foreclosed a finding of probable cause.  The Court finds that these factual allegations are sufficient to allow the claim asserted against Defendant in his individual capacity to proceed.  Accordingly, the Court **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to the state law claim asserted against Defendant in his individual capacity.

-17-

### 3. Sovereign Immunity

The doctrine of sovereign or governmental immunity generally shields the State and its officials and agents from being sued in their official capacity for torts committed during the course of performing a governmental function. <u>Hinson v. City of Greensboro</u>, 753 S.E.2d 822, 827 (N.C. Ct. App. 2014). "Police officers, as public officers, share in the immunity of their governing municipalities." <u>Moore v. Evans</u>, 476 S.E.2d 415, 421 (N.C. Ct. App. 1996). Municipalities may waive their immunity to suit by purchasing liability insurance. <u>Hart</u>, 784 S.E.2d at 216-17; <u>Hinson</u>, 753 S.E.2d at 827.

The Amended Complaint, however, fails to allege facts establishing that Forest City waived its immunity by purchasing liability insurance. Because Plaintiff has failed to allege facts establishing a waiver of immunity, the malicious prosecution claim asserted against Defendant Weeks in his official capacity as a police officer with the Forest City Police Department is subject to dismissal. <u>See Fullwood v. Barnes</u>, 792 S.E.2d 545, 550 (N.C. Ct. App. 2016) (holding that a complaint must specifically allege a waiver of immunity to state an official capacity claim); <u>Dubois v. Henderson Cty. Bd. of Educ.</u>, Civil No. 1:13-cv-00131-MR-DLH, 2014 340475, at *7 (W.D.N.C. Jan. 30, 2014) (Reidinger, J.) (adopting Memorandum and Recommendation recommending the dismissal of official

capacity claims where the complaint failed to allege that the county purchased an insurance policy that waived its immunity); <u>Eller v. Kaufman</u>, No. 2:11cv31, 2012 WL 3018295, at *10 (W.D.N.C. Jul. 24, 2012) (Howell, Mag. J.) (dismissing official capacity claim where the plaintiff failed to allege that the government agency purchased liability insurance).  Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss as to the official capacity state law claim.

### 4.  The Punitive Damage Claim

Punitive damages are available to a plaintiff in North Carolina in order to punish a defendant for its egregious wrongful acts and to deter the defendant and other individuals from committing similar wrongful acts.  N.C. Gen. Stat. § 1D-1. A Plaintiff may recover punitive damages only where a defendant is liable for compensatory damages and the plaintiff proves the existence of one of the aggravating factors by clear and convincing evidence.  N.C. Gen. Stat. § 1D-15. The three aggravating factors include: (1) fraud; (2) malice; and (3) willful or wanton conduct.  N.C. Gen. Stat. § 1D-15(a).  The Amended Complaint contains factual allegations that, if true, could give rise to punitive damages against Defendant Weeks.  <u>See</u> <u>Hart</u>, 784 S.E.2d at 218.  The Amended Complaint alleges that Defendant Weeks acted deliberately with intentional disregard to Plaintiff's

Fourth Amendment rights, which Defendant knew or should have known would result in injury to Plaintiff.  While Defendant repeatedly attempts to spin the allegations of the Amended Complaint into claims of negligence, the Amended Complaint clearly asserts that Defendant Weeks knowingly and intentionally withheld information from the magistrate in order to obtain an arrest warrant where there was no probable cause.   The Court finds that the Amended Complaint contains sufficient factual allegations to support a punitive damage claim and, thus, **RECOMMENDS** that the District Court **DENY** the Motion to Dismiss as to the request for punitive damages.

## IV.    Conclusion

The Court **RECOMMENDS** that the District Court **GRANT in part** and **DENY in part** the motion [# 8].  The Court R**ECOMMENDS** that the District Court **GRAN**T the motion as to the official capacity state law malicious prosecution claim and **DENY** the motion as to the remaining claims.

Signed: July 5, 2017

Dennis L. Howell
United States Magistrate Judge

-20-

## **Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen** (**14**) days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

-21-